**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHA PEREZ, | No. C 10-04181 JSW |
| Plaintiff, | **ORDER GRANTING, IN PART, AND DENYING AS MOOT, IN PART, DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| ALAMEDA COUNTY SHERIFFS' OFFICE, | |
| Defendant. | |

## INTRODUCTION

This matter comes before the Court upon consideration of the Motion for Summary Judgment or Partial Summary Judgment filed by Defendants, Alameda County Sheriff's Office ("ACSO"), Steven Wolf ("Wolf"), Mathew Farrugia ("Faruggia"), Dean Stavert ("Stavert"), Donald Buchanan ("Buchanan") and Gregory Ahern ("Sheriff Ahern") (collectively "Defendants"). The Court has considered the parties' papers, relevant legal authority, the record in this case, and it has had the benefit of oral argument.[1] The Court GRANTS, IN PART, AND DENIES AS MOOT, IN PART, Defendants' motion.

---

[1] On January 18, 2012, Defendants filed a statement of recent decision and attached a copy of *White v. City of Pasadena*,___ F.3d ___ 2012 WL 118569 (9th Cir. Jan. 17, 2012). Plaintiff objects to the submission, on the basis that Defendants did not comply with Northern District Civil Local Rule 7-3(d), and on the basis that the opinion has no bearing on her claims. Although Defendants should have requested leave of court to file the statement, Plaintiffs' objections are overruled. In her objection, Plaintiff also states that, depending on the outcome of an investigation by the Equal Opportunity Employment Commission, she intends to amend her complaint to include additional claims , and she states she may need to seek a continuance of the impending pretrial conference and trial dates. The Court notes that the deadline to amend the pleadings has long passed. (*See* Docket No. 18.) Moreover, Plaintiff has yet to file a motion seeking either form of relief. As such, the Court shall not delay issuing its ruling on the Defendants' motion.

**BACKGROUND**

Plaintiff, Asha Perez ("Perez")[2] alleges that Defendants violated California's Fair Housing and Employment Act ("FEHA"), California Government Code § 12900, *et seq.*, and she asserts claims for: Sexual Harassment and a Hostile Work Environment; Sex Discrimination; Retaliation; Failure to Prevent Harassment and Take Corrective Action (the "FEHA claims"). Perez also asserts claims for: Aiding and Abetting the FEHA claims; Negligent Hiring, Retention and Supervision; Conspiracy to Violate Plaintiff's Civil Rights, pursuant to 42 U.S.C. § 1985; and Neglect to Prevent Wrongs Conspired, pursuant to 42 U.S.C. § 1986. Perez also asserted claims for intentional and negligent infliction of emotional distress and a violation of the Fourth Amendment, pursuant to 42 U.S.C. § 1983.

The following facts are undisputed, unless otherwise noted. ACSO hired Perez in 1998, promoted her to deputy in 2000, and has employed her as a deputy since that time. (Docket No. 35, Declaration of C. Christine Maloney in Support of Defendants' Motion for Summary Judgment ("Maloney Decl."), ¶ 2.2, Docket 35-2, Maloney Decl., Ex. C (Deposition of Asha Perez ("Perez Depo.") at 16:23-25, 19:8-22:5).)[3] With the exception of a one-year period, discussed in more detail below, Perez has been at the top step of the pay scale since 2005. (Maloney Decl., Ex. C (Perez Depo. at 21:22-22:5).) In 2005, Perez applied to be a patrol deputy, which she perceived as a sought-after assignment, and she was assigned to patrol in the AC Transit Unit. (*Id.* (Perez Depo. at 62:4-25, 66:9-67:13).)[4]

Ahern was the Alameda County Sheriff at all times relevant to this dispute. (Compl. ¶ 19.) Buchanan was the Captain of contract services, which included oversight of the AC Transit unit. Stavert was the Lieutenant and commanding officer for the AC Transit unit.

---

[2] Perez' maiden name is Jones, and her current married name is Bowling. At the time of the incidents giving rise to this lawsuit, her married name was Perez, but there are some documents in the record that refer to her as Asha Jones. The Court shall refer to her as Perez for the sake of consistency.

[3] The Maloney Declaration contains two paragraphs labeled "2," and the Court shall refer to them as 2.1 and 2.2 respectively.

[4] AC Transit receives police services from the ACSO pursuant to a contract. (Docket No. 37, Declaration of Dean Stavert ("Stavert Decl."), ¶ 7.)

(Stavert Decl., ¶ 2.) Wolf supervised Perez between January and June 2007. (Maloney Decl., Ex. C (Perez Depo. at 106:5-107:6, 126:20-127:17).) Farruggia supervised Perez between July 2007 through August 2009. (*Id.* (Perez Depo. at 133:16-23); Docket No. 36, Declaration of Matthew Farrugia ("Farrugia Decl."), ¶ 2.)

From 1999 through 2008, Perez' supervisors consistently rated her overall performance as meeting or exceeding standards, and they consistently rated her as meeting or exceeding standards in individual categories of performance. (*See* Docket No. 40, Declaration of Arcolina Panto ("Panto Decl.") in Opposition to Defendants' Motion for Summary Judgment, Ex. J (Performance Evaluations).) The only exception is in 2008, when Farrugia gave her an "improvement needed" rating on her quality of work. Farrugia noted that Perez' "overall quality work product needs improvement," because it contained grammatical errors and lacked information. (*Id.* at ASCO 000049.)

Perez contends that, although Wolf initially was cordial to her, their relations "[p]retty much went down hill right away." However, Perez testified that he did not treat her poorly and did not say anything she felt was inappropriate, discriminatory or harassing prior to December 2007. (Panto Decl., Ex. E (Perez Depo. at 104:4-9, 104:18-105:14, 107:7-17); Maloney Decl., Ex. C (Perez Depo. at 126:16-19, 127:2-20, 131:8-12).) Perez testified that she believed Wolf engaged more with male deputies, and, as a result, she did not feel like a part of the team. (*Id.* (Perez Depo. at 105:1-5, 107:18-25).)

Perez claims that, in December 2007, Wolf referred to another officer as a "protected-class bitch" and a "member of the pink flamingoes club," which Perez believed was a reference to the fact that the officer was a lesbian. (Panto Decl., Ex. E (Perez Depo. at 289:7-290:14, 290:17-291:15, 294:17-23); Maloney Decl., Ex. C (Perez Depo. at 291:6-295:10); Docket No. 34, Declaration of Beatrice Liu in Support of Defendants' Motion for Summary Judgment ("Liu Decl."), ¶ 8; Docket No. 34-2, Liu Decl., Ex. E (December 8, 2010 Office of Administrative

3

1 Hearing Transcript ("12/8/10 OAH Tr.") at 7:15-9:17).)[5] Perez is heterosexual, found the
2 remarks offensive, and told Wolf that he was not going to "f–k [a fellow officer] up in front of
3 me." (Panto Decl., Ex. E (Perez Depo. at 298:20-299:2).) Perez admitted that she did not hear
4 Wolf make any other comments that she construed as derogatory comments about lesbians.
5 (Maloney Decl., Ex. C (Perez Depo. at 296:6-9).) Perez also admitted that Wolf never made
6 any comments - derogatory or otherwise - to *her* about *her* gender or *her* sexual orientation.
7 (Maloney Decl., Ex. C (Perez Depo. at 288:21-289:6, 296:10-297:10).)

8 In Perez' view, after she had expressed her opinion to Wolf, she was done with the
9 matter. (Panto Decl., Ex. E (Perez Depo. at 299:1-16); Liu Decl., Ex. E (12/8/10 OAH Tr. at 8-
10 17).) However, Perez claims that in mid-2008, Wolf began to harass her and to retaliate against
11 her for having complained about the pink flamingo and protected class bitch remarks. (*See,*
12 *e.g.,* Panto Decl., Ex. E (Perez Depo. at 297:8-298:19).) For example, Perez claims that Wolf
13 treated her differently than her male colleagues and that he yelled at her in front of other
14 officers. (Panto Decl., Ex. E (Perez Depo. at 107:18-108:4, 299:20-300:11); *see also* Maloney
15 Decl.,
16 ¶ 2.1, Docket 35-1, Maloney Decl., Ex. B (DFEH complaints at 2-4).)

17 Perez claims that she complained about Wolf's comments and his actions to her superior
18 officers. According to Perez, they threatened to transfer her, laughed at her, told her she was
19 "too emotional" or was overreacting, and discouraged her from bringing her complaints to the
20 EEOC. Perez also claims that Defendants did not - and to this day have not - investigated her
21 claims or correct the problems she perceived. Rather, Defendants joined together to
22 manufacture a disciplinary action against Perez, discussed below. (*See* Compl. ¶¶ 33-34, 40-42,
23 46-47, 51-55, 62-65, 69-71, 90, 108-109, 111-113, 115, 123; Panto Decl., Ex. E (Perez Depo. at
24 45:22-46:7, 216:2-222:12, 253:2-256:17, 258:6-23, 261:14-265:13, 272:1-24, 274:23-276:11,
25 286:7-20, 286:4-288:24).)

---

[5] Defendants' objections to Plaintiffs' deposition testimony at 289:7-290:19 and 294:18-23 are OVERRULED. The Court shall address additional objections as needed and, to the extent the Court did not rely on testimony to which Defendants object, those objections are OVERRULED AS MOOT.

4

Defendants contend that Perez had recurring problems with documentation during her tenure at the AC Transit unit. (Stavert Decl., ¶ 4; Farruggia Decl., ¶¶ 3-4.) In 2008, Farruggia asked Stavert for advice on how to address these issues, and they decided to put Perez on a 90 day Performance Improvement Program ("PIP"). (Stavert Decl., ¶ 6; Farruggia Decl., ¶¶ 5-6, Ex. B.) Because Perez complied with the PIP directives, Farruggia terminated it after 60 days. (Farrugia Decl., ¶ 5, Exs. C-D.) Farruggia attests that Perez began to slip in performance in 2009 and, when he went to look for some attachments on one of her reports, he found documents from 2008 and 2009 that Perez had not completed or had failed to turn in to be processed, including citations, evidence and report attachments. (Farruggia Decl., ¶¶ 6-7.) Farruggia also discovered copies of citations that led him to believe that Perez may have been overstating statistics by reporting more citations that she actually was issuing. Stavert directed that the matter be referred to internal affairs for an investigation, because positive discipline efforts had failed. (*Id.*, ¶¶ 8-9; Stavert Decl., ¶ 6, Ex. A (ACSO General Order on Commendations, Discipline and Personnel Complaints).) Perez has denied any wrongdoing with respect to these charges. (*See, e.g.,* Maloney Decl., Ex. C (Perez Depo. at 248:19-250:1).)

Perez received notice that she was the subject of an internal affairs investigation in July 2009. (Maloney Decl., Ex. C (Perez Depo. at 186:1-25, Perez Depo. Ex. 21).) Later that year, Perez was transferred from the AC Transit Unit to the Glenn Dyer correctional facility. According to Defendants, Perez was transferred as a result of cutbacks imposed by AC Transit and not as a result of the internal affairs investigation. (Stavert Decl., ¶¶ 7-9.) Perez views the transfer as punishment, because it is not an "elite" assignment, like patrol. (Panto Decl., Ex. E (Perez Depo. at 27:1-28:18, 222:14-223:2).)

On January 14, 2010, at the conclusion of the internal affairs investigation, Ahern recommended that Perez received a one-step pay decrease for a one-year period. (Maloney Decl., Ex. C (Perez Depo. at 188:16-189:7, 189:15-19, Perez Depo. Ex. 22).) Perez requested a hearing pursuant to *Skelly v. State Personnel Bd.*, 15 Cal. 3d 194 (1975), which was held in March 2010. At the conclusion of that hearing, the administrative review board recommended that the reduction in pay stand. (*Id.* (Perez Depo. at 190:5-191:21, Perez Depo. Ex. 23).)

5

Farrugia also was a subject of the internal affairs investigation, based on allegations that he failed to supervise Perez adequately. Those findings were sustained. Farruggia also received a temporary pay reduction and was transferred out of the AC Transit unit. (Farrugia Decl., ¶ 9.)

On April 7, 2010, Perez filed a complaint with the Department of Fair Employment and Housing ("DFEH"), in which she alleged that Defendants demoted her, harassed her, retaliated against her, and failed to prevent discrimination and retaliation, on the basis of sex, sexual orientation, and engaging in a protected activity. (*See* DFEH Complaints.) Perez outlined the events described above, and as she does in this case, she claimed that Farrugia and Wolf "orchestrated a basis for disciplinary action against her," in retaliation for her complaints about Wolf's comments regarding lesbian officers and the perceived harassment. (*See* DFEH Complaints at 2-4; Compl. ¶¶ 48-50, 78-56, 107, 110, 114.)[6] On that same date, the DFEH closed the case and issued a right to sue letter, because Perez had requested "an immediate right to sue notice." (Maloney Decl. ¶ 2.1, Ex. B (Right to Sue Letters).)

On July 7, 2010, Ahern sent Perez a letter, in which he advised her that her salary would be reduced effective July 25, 2010, and that she had the right to appeal the decision to the Alameda County Civil Service Commission (the "Commission"). (Liu Decl., ¶ 3 & Ex. A.) Perez timely appealed that decision (the "Appeal").[7]

On September 16, 2010, Perez filed her complaint in this action.

On November 29, 2010, December 3, 2010, and December 8, 2010, Administrative Law Judge Mary-Margaret Anderson ("Judge Anderson") held a three day evidentiary hearing on Perez' Appeal. (Liu Decl., ¶ 5, Ex. E (Excerpts from Hearing Transcripts).) ACSO called Deputy Peter Norton, who conducted the internal affairs investigation, Buchanan, Farruggia, Wolf and Buchanan. (Liu Decl., ¶ 5.) Perez called Sergeant Stallworth, Deputy Lotman,

---

[6] On December 16, 2011, in response to a question the Court posed in its Notice of Tentative Ruling and Questions for Hearing, Plaintiff filed a request for judicial notice, in which she asked the Court to take judicial notice of the DFEH Complaints and the Right to Sue letters. Because those materials are in the record, the Court denied the request as moot on the record at the hearing.

[7] The Court shall refer to these proceedings as "the proceedings before the Commission" or "the Appeal."

6

Deputy Devine, Darlene Hornsby, and Pamela Landry as witnesses in her defense.[8] (Liu Decl., ¶ 5, Ex. E; Maloney Decl., Ex. C (Perez Depo. at 194:11-197:22).) Perez cross-examined ACSO's witnesses about their recollection of whether she had complained of harassment and retaliation, and she presented an opening statement which referenced the fact that she believed she had been the victim of retaliation, harassment and differential treatment and that ACSO took no action to correct the problems. Perez' witnesses also testified about these issues, in particular, the manner in which men and women were treated differently within ACSO and the alleged hostile work environment. (*See, e.g.,* Liu Decl., Ex. E (11/29/10 OAH Tr. at 120:21-122:13, 214:13-216:4; 12/3/10 OAH Tr. at 73:21-74:10, 76:6-23, 86:7-87:24, 90:10-13, 94:4-23, 100:15-102:23, 112:6-113:18, 129:1-131:18, 134:23-135:12, 138:5-139:1; 12/8/10 Tr. at 7:15-14:16, 21:22-28:1, 34:4-35:2, 43:11-44:24, 54:11-55:11, 126:15-127:18, 138:11-140:25, 143:3-144:3, 176:14-177:25, 181:9-184:21, 185:22-187:18); Ex. F (Closing Brief at 3:3-18, 15:8-15).) In response to at least one objection by Defendants' counsel to this line of inquiry, Perez' counsel noted that the testimony "goes to the retaliation claim." (Liu Decl., Ex. E (12/3/10 Tr. at 129:1-5).) However, Perez also noted that she was pursuing a hostile work environment claim through "appropriate legal channels", and, in her closing brief, Perez argued that "this is not the forum for Deputy Perez to allege or prove retaliation." (Liu Decl., Ex. E (12/3/10 OAH Tr. at was 94:4-23); Ex. F (Closing Brief at 2:9-11).)

On March 2, 2011, Judge Anderson issued a Report and Recommendation ("Report"), in which she concluded that discipline in the form of the pay reduction was appropriate. (Liu Decl., ¶ 5, Ex. C (Report at 15, ¶ 9 & Conclusion).) Judge Anderson also noted that Perez "raised various defenses and theories in her opening argument and closing brief. All contentions made by [Perez] and not specifically addressed herein are found to be without merit and rejected." (Report at 6.)

---

[8] Perez has identified Hornsby, Landry and Divine as witnesses in this case with knowledge of harassment, discrimination and retaliation. (Maloney Decl., Ex. D.)

7

On May 4, 2011, the Commission adopted Judge Anderson's Report. (Liu Decl., ¶ 6, Ex. D.) Perez did not seek judicial review of the Commission's decision, pursuant to California Code of Civil Procedure § 1094.6.

The Court shall address specific additional facts as necessary in the remainder of this Order.

## ANALYSIS

**A.     Legal Standards Applicable to Motions for Summary Judgment.**

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" citing to, *inter alia*, depositions, documents, affidavits, or other materials. Fed. R. Civ. P. 56(c)(1)(A). A party may also show that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. *Id*. at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable

8

particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.     Plaintiffs' Concessions.**

On December 12, 2011, the Court, pursuant to stipulation, dismissed Perez' seventh claim for relief, for intentional infliction of emotional distress. Accordingly, the Court DENIES IN PART, AS MOOT, Defendants' motion on that claim. Perez' ninth claim for relief is a claim for violation of her Fourth Amendment rights, pursuant to Section 1983. In her opposition brief, Perez states that "[r]egarding the search and seizure, [Perez] concedes that this cause of action is unlikely to survive and has largely been resolved." In light of this concession, the Court GRANTS, IN PART, Defendants' motion for summary judgment on that claim.

**C.     Judge Anderson's Findings Are Entitled to Preclusive Effect in this Case.**

Defendants' primary argument in support of their motion, is that Judge Anderson's factual findings must be given preclusive effect and, as a result, Perez cannot prevail on her claims in this case. Defendants' argument hinges on Perez' failure to judicially exhaust her remedies in the proceedings before the Commission, which she pursued while she also pursued remedies before the DFEH and in this Court.

Defendants do not claim that Perez has failed to exhaust FEHA's administrative process.[9] They also acknowledge that public employees who believe they are victims of discrimination do not have to exhaust FEHA's administrative remedies *and* an internal remedy

---

[9] For this reason, the Court finds Perez' reliance on *Rojo v. Klinger*, 52 Cal. 3d 65 (1990), and *Abilleira v. Court of Appeal*, 17 Cal.2d 280 (1941) unpersuasive, because those cases dealt with the doctrine of failing to exhaust administrative remedies, rather than "judicial exhaustion." The Court also finds that *Westlake Comm. Hosp. v. Superior Court*, 17 Cal. 3d 465 (1976), does not assist Perez. Although the court did not expressly evaluate whether or not the unreviewed administrative decision would have preclusive effect, it stated that "so long as a quasi-judicial decision is not set aside through appropriate review procedures, the decision has the effect of establishing the propriety of the [defendant's] actions." *Id.* at 484. Ultimately, the court found that the district court properly granted summary judgment and that plaintiff's claims were premature because she had failed to judicial exhaust her claims. *Id.* at 485.

9

provided by their employer before they can pursue a FEHA claim in court. Rather, public employees can elect in which forum they choose to proceed. *Schifando v. City of Los Angeles*, 31 Cal. 4th 1074, 1079-80 (2003). However, once an employee elects a particular forum, however, he or she "must exhaust 'the chosen administrative forum's procedural requirements.'" *Page v. Los Angeles Co. Probation Dept.*, 123 Cal. App. 4th 1135, 1142 (2004) (quoting *Schifando*, 31 Cal. 4th at 1088).

The *Schifando* court recognized that a public employee could "tread onto a 'procedural minefield' if a claim was filed with the [DFEH] at the same time remedies were pursued under" an internal grievance procedure. *Schifando*, 31 Cal. 4th at 1079; *see also id.* at 1092 (noting "potential procedural issues ... might arise in the situation where an employee chooses to pursue both avenues of redress"). Because the plaintiff in had elected to pursue his claims through the DFEH, the *Schifando* court was not called upon to "decide whether his failure to exhaust [internal] procedures would have barred any other claim based on the same acts by the" defendant. *Id.* at 1092 & n.6.

In *Page*, the court sustained a demurrer to the plaintiff's FEHA claims, which was filed while her administrative hearing before a civil service commission was on-going. The court reasoned that, having "chose[n] the civil service commission process and proceeded through three days of a hearing over the course of four months, resulting in a comprehensive decision by the hearing officer," the plaintiff "was not free to ignore and abandon the administrative process and proceed to a FEHA action for damages." *Id.* at 1142. Thus, if a public employee elects to proceed with an internal grievance procedure and receives an adverse decision in that forum, "the employee must exhaust judicial remedies by filing a petition for a writ of mandate in the trial court, or else the administrative decision will be binding on subsequent FEHA claims." *Id.* (citing *Schifando*, 31 Cal. 4th at 1090). Defendants argue that this is the situation in which Perez finds herself. Perez argues that the facts in *Page* are distinguishable, because she did not elect to pursue FEHA claims before the Commission. For reasons that are discussed in more detail below, the Court finds Perez' attempt to distinguish *Page* unpersuasive.

The Court also finds the facts in *Ruiz v. Department of Corrections,* 77 Cal. App. 4th 891 (2000) to be distinguishable from the facts here. In that case, although the court held that "state employees may pursue their claims of employment discrimination with either the Board or the DFEH or both," the issue was whether the plaintiff was precluded from pursing his claims because he did not exhaust his internal administrative remedies before the State Personnel Board ("Board"). *Id.* at 897-98. The court concluded that because he had exhausted FEHA's administrative remedies, he was entitled to pursue the lawsuit, and was not required to exhaust his administrative remedies before the Board as well. *Id.* at 896-899. Unlike Perez, the plaintiff in *Ruiz* "initiated and then *withdrew* review of his termination" with the Board. *Id.* at 895 (emphasis added). Thus, *Ruiz* provides no protection from the minefield into which Perez wandered.

The Court now turns to the issue of whether or Judge Anderson's findings have a preclusive effect on Perez' claims in this case. "Federal courts must give preclusive effect ... to unreviewed administrative findings under federal common law rules of preclusion." *Eilrich v. Remas*, 839 F.2d 630, 632 (9th Cir. 1988); *see also Kessler v. Bishop*, 2011 WL 4635117, at *9 (N.D. Cal. Oct. 5, 2011); *cf. White v. City of Pasadena*, __ F.3d __, 2012 WL 118569, at *5 (9th Cir. Jan. 17, 2012) (giving preclusive effect to findings made during administrative proceeding that had been reviewed and upheld after plaintiff filed petition for writ of mandamus, noting that different preclusion rules may apply in some circumstances to unreviewed findings of administrative proceedings). The rules of preclusion will apply both to factual findings and legal issues, as long as the state proceedings satisfy certain standards of fairness: "(1) ... the administrative agency act[s] in a judicial capacity; (2) ... the administrative agency resolve[s] disputed issues of fact properly before it; and (3) ... the parties have an adequate opportunity to litigate." *Miller v. County of Santa Cruz*, 39 F.3d 1030, 1032-33 (9th Cir. 1994) (citing *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422 (1966)); *see also White*, 2012 WL 118569, at *7 & n. 2 (applying California's "judicial character" test, which "is substantially the same as the Supreme Court's test for determining whether a federal court should give an an

11

1 unreviewed state administrative proceeding preclusive effect under the federal common law").[10]
2 The fact that this case involves claims under FEHA does not alter this analysis. *See Schifando,*
3 31 Cal. 4th at 1090-91; *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 65 (2000).

### 1. The Appeal Satisfies the *Utah Construction* Standards of Fairness.

Perez does not dispute that Judge Anderson acted in a judicial capacity. *See, e.g., Eilrich*, 839 F.2d at 634 (hearing officer acted in judicial capacity, because he "applied an established rule to specific existing facts, rather than establishing a rule of law applicable to future cases"); *People v. Sims*, 32 Cal. 3d 468, 480 (1982) (same), *superseded by statute on other grounds as stated in People v. Preston*, 43 Cal. App. 4th 450, 458 (1996). Defendants have demonstrated that Perez submitted disputed issues of fact for resolution during the proceedings before the Commission, including many, if not all, of the same facts she intends to rely on in this action. *See Beckway v. DeShong*, 717 F. Supp. 2d 908, 920 (N.D. Cal. 2010) ("'An issue is actually litigated when it is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined.'") (quoting *People v. Carter*, 36 Cal. 4th 1215, 1240 (2005)).

At oral argument, in response to the Court's questions, Perez asserted that the Appeal did not comport with the *Utah Construction* factors because her counsel in this case was not present.[11] However, it is undisputed that Perez was represented by counsel at the Appeal. *See Eilrich*, 839 F.2d at 634 (fact that parties represented by counsel evidence of compliance with *Utah Construction* standards). Perez fails to provide any authority that the failure to have a "private attorney" present during administrative proceedings is not sufficient to satisfy the *Utah Construction* factors.

---

[10] The facts in the *White* case are distinguishable from the facts here. In that case, the plaintiff had filed a previous lawsuit raising similar claims, which resulted in a jury verdict against her. In addition, the plaintiff filed a grievance procedure and judicially exhausted her remedies by seeking a petition for writ of mandamus. Although the facts may be distinguishable, the *White* court's reasoning and the legal principles on which it relies are applicable to this case.

[11] The Court notes that, during her deposition, Ms. Hornsby testified that she met counsel, albeit briefly, at the Appeal. (Panto Decl., Ex. O (Hornsby Depo. at 64:12-14).)

12

Perez also argues that she did not have an adequate opportunity to litigate the issues. Perez and Defendants were entitled to call and cross-examine witnesses. *See, e.g., White*, 2012 WL 118569, at *7, *9; *Kessler,* 2011 WL 4635117, at *10. It is clear from the record that Judge Anderson did not restrict Perez' ability to present evidence about Defendants' alleged treatment of her and other women in the ACSO, although she did restrict some rebuttal testimony on these issues. (*See, e.g.,* Panto Decl., Ex. Q.) Further, Perez does not dispute that, pursuant to the Commission's Rules, both parties were "entitled to appear personally at the hearing, to produce evidence, and to have counsel and a public hearing." (Liu Decl., Ex. B (Commission Rules, §§ 2116, 2118).)

Perez also does not dispute that the Commission's rules also permit a petition for issuance of subpoenas to take the deposition of a material witness prior to a hearing. (*Id.* (Commission Rules, §§ 2116, 2118).) Further, the Commission's hearings are recorded, and the Commission "shall exercise its powers ... to subpoena and require the attendance of witnesses and the production of books and papers ...." (*Id.* (Commission Rules § 2118).) Finally, at the conclusion of a hearing, the hearing officer is required to prepare written findings of fact and a recommended disposition, which Judge Anderson did in this case. (*Id.*) Perez also has not disputed Judge Anderson's neutrality. (*See* Maloney Decl., Ex. C (Perez Depo. at 193:24-194:4).)

The Court concludes that Perez has not raised a genuine issue of disputed fact that the Appeal proceedings do not satisfy the *Utah Construction* standards of fairness. *See, e.g., White,* 2012 WL 118569, at *9 (administrative proceedings had requisite "judicial character" where plaintiff and City able to call and subpoena witnesses, verbatim transcript of proceeding was produced, and proceeding was conducted by neutral arbiter, who issued written decision) *Eilrich*, 839 F.2d at 634 (fourteen day hearing, where both sides were entitled to call and cross-examine witnesses, subpoenas were issued, and parties presented oral argument and written memoranda); *Kessler,* 2011 WL 4635117, at *10-11; *Gayle v. County of Marin*, 2005 WL 3302860, at 4 (N.D. Cal. Dec. 6, 2005) (plaintiff had public evidentiary hearing, was represented by counsel, permitted to present oral and documentary evidence and to call

13

witnesses); *YKA Indus. v. Redevelopment Agency*, 174 Cal. App. 4th 339, 357 (2009) ("Indicia of proceedings undertaken in a judicial capacity include a hearing before an impartial decision maker; testimony given under oath or affirmation; a party's ability to subpoena, call, examine and cross-examine witnesses, to introduce documentary evidence, and to make oral and written argument; the taking of a record of the proceeding; and a written statement of reasons for the decision.") (internal quotations and citations omitted).

Therefore, Defendants have shown that Judge Anderson's decision is entitled to the same preclusive effect, if any, to which it would be entitled under state law. Defendants contend that, whether the Court applies the doctrine of claim preclusion or the doctrine of issue preclusion, the result is the same: Judge Anderson's decision is entitled to preclusive effect, and Perez cannot prevail on her claims. Because the Court finds that issue preclusion applies, the Court does not reach Defendants' argument that claim preclusion applies.

**2. The Court Finds Issue Preclusion Serves to Bar Perez' Claims.**

"'Issue preclusion ... bars successive litigation of an issue of fact or lay actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.'" *White*, 2012 WL 118569, at *6 (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008), in turn quoting *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001)); *see also Eilrich*, 839 F.2d at 632; *Murphy*, 164 Cal. App. 4th at 398 (issue preclusion precludes a party from relitigating matters litigated and determined in prior proceeding). Under California law, the following six criteria must be met for issue preclusion to apply:

> (1) the issue sought to be precluded from litigation must be identical to that decided in a former proceeding; (2) the issue to be precluded must have been actually litigated in the former proceeding; (3) the issue to be precluded must have been necessarily decided in the former proceeding; (4) the decision in the former proceeding must be final and on the merits; (5) the party against whom preclusion is sought must be the same as, or in privity with the party to the former proceeding; and (6) application of issue preclusion must be consistent with the public policies of preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation.

14

1  *White*, 2012 WL 118569, at &6 (quoting *Lucido v. Superior Court*, 795 P.2d 1223, 1225-27
2  (Cal. 1990)).  It is undisputed that the proceedings before the Commission resulted in a final
3  judgment, because Perez did not file a writ of mandate.  It also is undisputed that Perez was a
4  party to those proceedings.  Perez argues that the remainder of the elements are not satisfied,
5  because she carefully navigated to keep FEHA related issues out of the proceedings before the
6  Commission.  (*See* Opp. Br. at 15-19.)

"The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same." *Kessler*, 2011 WL 4635117, at *14 (quoting *Hernandez v. City of Pomona*, 46 Cal. 4th 501, 511-12, omitting citation).  After the parties presented their evidence, which as noted above, included testimony about the alleged harassment and discrimination against women in the ACSO and the purported retaliatory actions taken by Defendants, Judge Anderson made the following factual findings, among others:

> [Perez] believes that the investigation is a result of lies by Farrugia and Wolf, who conspired to have her transferred from her AC Transit position. According to [Perez], this began as the result of a comment that Wolf made in late December 2007.  At that time, she heard him refer to a female sergeant as a "pink flamingo," a derogatory statement. [Perez] claims that her problems began when she told Wolf that the statement was offensive. [Perez] asserts that, after this incident, both Wolf and Farrugia "were looking to get [her] out of the unit." ... [Perez] stated that she was "giving 100 percent" in 2008 and 2009 "because of all the retaliation I had been enduring.  She felt isolated and harassed.  Later in her testimony, [Perez] added Stavert to the group that was conspiring against her.
> ...
> Other witnesses supported [Perez'] testimony as regards her relationship with Wolf, to the extent they did not appear to get along very well. [Perez] had mentioned difficulties with him to others around the time that she says the difficulties were occurring.  But there was no support for her accusations of a conspiracy to make her work environment difficult, let alone that Farrugia collected paperwork and held it for months so that he could charge her with neglect of duty.  Farrugia denied any ill feelings toward Perez, describing her only as "unorganized."  Wolf denied making the "pink flamingo" comment.  Buchanan credibly testified that if any complaints had been made to him, he would have investigated them. *The only logical conclusion on these facts is that [Perez] fabricated a story to excuse her conduct.*
> ...
> The evidence demonstrated that [Perez] neglected her duties as a patrol deputy with AC Transit Police Service by failing to correctly process citations and other documents.  In addition, her patrol logs were erroneous

15

> to the extent that it is reasonable to conclude that she inflated her statistics. [Perez] was dishonest when questioned about missing and incorrect paperwork. All of these actions were harmful to the operation of the department and potentially harmful to members of the public.

(Liu Decl., Ex. C (Report, Findings of Fact ¶¶ 18, 20, 22 (emphasis added).)

In the *White* case, the plaintiff filed suit and alleged, *inter alia*, that her employer terminated against her in violation of FEHA. 2012 WL 118569, at *5. Prior to filing suit, the plaintiff filed a grievance in which she challenged her employer's decision to terminate her. The arbiter of the administrative proceedings rejected the plaintiff's theory that the defendant's action were in retaliation for here "'temerity' to sue the department," finding them "'not persuasive.'" 2012 WL 118569, at * 10. The Ninth Circuit concluded that the issues in both proceedings were the same, whether the termination was in retaliation for filing a previous lawsuit. The court also concluded that "the determination that White's termination was not retaliatory was necessary to the ... decision" in the administrative proceedings. *Id*.

In order to prove her hostile work environment claim, Perez must establish, *inter alia*, that she was subject to unwelcome conduct that was sufficiently pervasive so as to alter the conditions of her employment and create a hostile work environment. *See Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 608 (1989). However, Judge Anderson concluded "there was no support for her accusations of a conspiracy to make her work environment difficult...." (Liu Decl., Ex. C (Report, Finding of Fact ¶ 20).) With respect to her discrimination claim, Judge Anderson's findings prevent Perez from establishing that the Defendants took any adverse action against her because of her gender. Similarly, her findings preclude Perez from establishing that Defendants retaliated against Perez because of her complaints to Wolf about the pink flamingo and other comments. *See, e.g., Guz v. Bechtel National, Inc*., 24 Cal. 4th 317, 353-58 (2000); *Fisher*, 214 Cal. App. At 612. Perez' claims under Government Code §§ 12940(i) and 12940(k), 42 U.S.C. §§ 1985 and 1986, negligence, and negligent hiring are dependent upon the harassment, retaliation and discrimination claims.

Thus, as in the *White* case, the proceedings before the Commission did raise the same factual issues that are raised by Perez' claims in this case. When Judge Anderson determined

16

the discipline was justified, Judge Anderson, like the arbiter in the *White* case, necessarily rejected Perez' theory that the Defendants had harassed Perez or retaliated against Perez because of her complaints. Those factual findings were necessary to Judge Anderson's decision. *White*, 2012 WL 118569, at *10.

The Court also finds that the sixth element is satisfied in this case. Perez had the opportunity to seek judicial review of Judge Anderson's adverse factual findings, but did not do so. "There can be no justification for plaintiff's position that she should be permitted to fail to assert at the administrative hearing ... civil rights violations as reasons that made her termination wrongful, fail to prevail on the writ without attempting to urge or to bring before the court those reasons, and then be allowed to recover damages in this ... action that resulted from" actions by the Defendants that are "alleged to be wrongful based on those same reasons." *Miller*, 39 F.3d at 1034 ((quoting *Swartzenbruder v. City of San Diego*, 3 Cal. App. 4th 896, 909 (1992), *overruled on other grounds by Johnson*, 24 Cal. 4th at 72); *cf. White*, 2012 WL 118569, at *10 (finding that permitting plaintiff to relitigate issue of retaliation would be "contrary to the public policy concerns underlying the issue preclusion doctrine").

Accordingly, the Court GRANTS Defendants' motion for summary judgment.

## CONCLUSION

By pursuing her FEHA claims and the Commission proceedings simultaneously, Perez "proceeded headlong into the 'procedural minefield,'" envisioned by the *Schifando* court, and she cannot escape unscathed. *Page*, 123 Cal. App. 4th at 1142. Accordingly, for the reasons set forth above, the Court GRANTS, IN PART, AND DENIES AS MOOT, IN PART, Defendants' motion for summary judgment. The Court shall issue a separate judgment, and the Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: January 30, 2012

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

17